UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

                Case No. 813-72193-reg

RUBIN FAMILY IRREVOCABLE
STOCK TRUST et al,                   (Jointly administered)
                                                                    Chapter 11
                                Debtor.
------------------------------------------------------------------x

## MEMORANDUM DECISION

Before the Court is the Debtors' motion objecting to the proofs of claim filed by ACE Investors, LLC ("ACE"), and seeking to disallow any claim by ACE for attorneys' fees and costs incurred post-petition.[1] The parties have stipulated that ACE is entitled to an allowed pre-petition claim in the amount of $3,464,365.13, less certain costs incurred by ACE attributable to expert witness fees.[2] They also have stipulated that ACE's collateral "has a value greater than the ACE Claim. . . [and] [i]n accordance with section 506(a)(1) of the Bankruptcy Code, and for all purposes in the Debtors' chapter 11 cases, the ACE Claim is secured in an amount equal to the amount of the ACE Claim."  [Dkt. #294, ¶3, 4].  On August 8, 2014, ACE filed a Supplemental Proof of Secured Claim amending its proofs of claim and asserting that it is entitled to a fully secured claim in the amount of $5,170,953.83, which includes post-petition attorneys' fees, expenses and interest through and including September 8, 2014.  [Dkt. #281].

---

[1] Also pending is ACE's related motion for relief from stay to permit it to return to the District Court for the Southern District of New York in order to augment its pre-petition judgment against the Debtors to seek post-judgment attorneys' fees and costs.  The Debtor opposed the motion and argued that the Bankruptcy Court is the appropriate forum to liquidate ACE's claim.  The parties have now resolved this dispute and consent to this Court's liquidation of the amount of ACE's claim which would negate any need to return to the District Court.
[2] ACE claims that the expert witness fee reduction should be $33,762.50, thus reducing the stipulated amount of ACE's claim to $3,430,602.63.  [Dkt #281].

The question for this Court to decide is whether, under sections 502 and 506 of the Bankruptcy Code, an oversecured[3] creditor in a chapter 11 case can assert a claim, as that term is defined in section 101(5) of the Code, for post-petition attorneys fees' and costs where the right to such fees and costs is set forth, not in a contract or statute, but in an otherwise enforceable and final pre-petition judgment; and if that claim is allowable under section 502, whether it is entitled to secured status under section 506(b). The distinction between the secured or unsecured status of the claim, if it is even allowable in the bankruptcy, makes a difference if the Debtors propose less than a 100% distribution to all creditors. Although the Debtors' proposed plan of reorganization, as drafted, and as indicated by the Debtors since the inception of this case, proposes to pay creditors 100%, the Debtors' counsel explained for the first time at a hearing on September 8, 2014, that the plan might not pay 100% if the amount of the ACE claim exceeds a certain amount. Thus, the determination of secured or unsecured status is necessary.

On September 8, 2014, the Court gave a preliminary ruling on the Debtors' objection to ACE's claim and indicated that a written decision would follow. The Court finds that the April 23, 2013 and May 8, 2013 Orders and Judgments of the District Court for the Southern District of New York, together created a liquidated judgment against the Debtors'[4] in the amount of $3,464,365.13, and established an unliquidated liability for "all attorneys' fees and costs of [ACE's counsel] to collect the Augmented Judgment . . . until the judgment has been fully

---

[3]  The Court presumes for purposes of this Decision that ACE is oversecured, but recognizes that the parties might not concede this point. The parties' stipulation is inconsistent on this point. The stipulation provides both that the collateral value is *greater than* $3,464,365.13, and that ACE is secured "in an amount equal to" $3,464,365.13. However, as will be seen later in this Decision, the distinction between secured and oversecured does not matter in this case because the Court finds that section 506(b) does not apply where, as here, the claim to post-petition attorneys' fees and costs does not arise from contract or statute as required by section 506(b).

[4]  As discussed later in this Decision, the Court recognizes that the judgment is not against all Debtors. However, the Debtors have proposed a joint plan which proposes to pay the amounts due under the Orders and Judgments jointly.

satisfied." These orders are final, non-appealable and fully enforceable against the Debtors[5] and are entitled to *res judicata* effect in this Court. Section 502 provides the basis for this Court to disallow a validly and timely filed proof of claim, and there is no basis in section 502 to disallow ACE's claim for post-petition attorneys' fees and costs to collect the judgment based upon the prior District Court orders. As such ACE's claim shall include attorneys' fees and costs "to collect the Augmented Judgment". This does not answer the secondary question of whether ACE is entitled to assert secured status with respect to the post-petition attorneys' fees and costs allowed under section 502. Under section 506(b) an oversecured creditor is entitled to a secured claim for "any *reasonable* fees, costs or charges provided for under the *agreement or State statute* under which such claim arose." 11 U.S.C. § 506(b) (emphasis added). This Court finds that because ACE's entitlement to post-petition attorneys' fees and costs is premised upon the existence of a judgment, as opposed to an agreement or State statute, the claim for post-petition attorneys' fees and costs should not be given secured status under section 506(b). Because the Court will not be examining ACE's post-petition attorneys' fees and costs under the lens of section 506(b), the "reasonableness" of the fees and costs is not an issue; rather, the standard to be applied to determine the allowance or disallowance of the claim under section 502 is that which is delineated in the Judgment, i.e., this Court will allow only those attorneys' fees and costs which it finds were incurred to "collect the Augmented Judgment."

ACE shall have a secured claim in these cases for at least the stipulated amount of $3,464,365.13, less expert witness fees, and will be entitled to an unsecured claim for the amount of post-petition attorneys' fees and costs it incurred to "collect the Augmented Judgment."

---

[5] Again, the Court recognizes that the Orders and Judgments were not entered as against all Debtors. However, the Debtors at all times in this case have proposed to treat these Debtors as jointly liable, assuming that the finding of joint and several liability was upheld by the Second Circuit, which it was.

*Facts*

On May 17, 2010, a stipulated judgment was entered against one of the debtors, Rubin Family Irrevocable Stock Trust ("Stock Trust"), in the District Court for the District of Utah in the original amount of $1,174,426.46, plus $392,805.94 in interest, plus $164,418.97 in attorneys' fees and costs, for a total judgment amount of $1,731,651.37 ("Utah Judgment"). The Utah Judgment also awarded, prospectively, "attorneys fees to collect the judgment." The Utah Judgment is final and non-appealable.

ACE subsequently domesticated the Utah Judgment in the Southern District of New York and pursued enforcement proceedings against the Stock Trust and related entities and individuals. In an Order and Judgment, dated April 23, 2013, the District Court for the Southern District of New York ("Southern District Court") added interest to the Utah Judgment, from May 1, 2010 to April 22, 2013, in the amount of $628,472.01. The District Court also augmented the Utah Judgment "to add all attorneys' fees and costs related to collection of the Judgment through the present proceedings. … [and] further augmented [the Utah Judgment] to add all attorneys' fees and costs related to the action in the United States District Court for the District of Utah contingent on any order or determination issued by that Court. . .."[6] (the "Augmented Judgment").

In the April 23, 2013 Order and Judgment, the Southern District Court also found the following related entities to be jointly and severally liable for the Augmented Judgment: the Stock Trust, Rubin Family Irrevocable Marital Trust ("Marital Trust")[7], the Rubin Family Irrevocable Realty Trust ("Realty Trust"), Robert Michael Rubin, individually ("Robert"), and

---

[6] The Utah Court subsequently declined to consider any further proceedings in that case, and marked the matter closed.
[7] The Marital Trust is not a debtor before this Court.

Margery Rubin, individually ("Margery").  Finally, the Southern District Court held, "[s]ubject to an appeal, the Augmented Judgment shall be further augmented by adding interest from April 22, 2013 onwards at a rate of 12% interest and for all attorneys' fees and costs of Windels Marx and Parsons Behle to collect the Augmented Judgment (the "Final Augmented Judgment") until the judgment has been fully satisfied."  In addition to adding the $628,472.01 in interest to the Utah Judgment, the April 23rd Order and Judgment also created a yet unliquidated liability for ACE's attorneys' fees and costs to collect the Augmented Judgment and specifically contemplated the entry of a subsequent "Augmented Judgment" and "Final Augmented Judgment."

On April 27, 2013, before the Augmented Judgment or Final Augmented Judgment could be entered liquidating the amount of attorneys' fees and costs to be awarded under the April 23rd Order and Judgment, the Stock Trust, the Realty Trust and Margery filed for protection under chapter 11 of the Bankruptcy Code.

On May 8, 2013, the Southern District Court, recognizing that the bankruptcy filings by the Stock Trust, Realty Trust and Margery stayed the entry of judgment against those entities, entered the Augmented Judgment only as against Robert Rubin, individually, in the amount of $3,464,365.13, "together with 12% compound interest, until paid."  The Southern District Court further stated that, "[ACE] may petition this Court in the future for further augmentation of the Augmented Judgment for interest, costs and attorneys fees to collect the Judgment."  (emphasis added).

Robert Rubin filed a chapter 11 petition on June 16, 2013.

The Debtors appealed the April 23rd and May 8th Orders and Judgments to the Second Circuit Court of Appeals.  On the Debtors' motion, this Court lifted the stay imposed by section

362(a) of the Bankruptcy Code and allowed the parties to proceed with the appeal. On April 17, 2014, the Second Circuit affirmed the April 23rd and May 8th Orders and Judgments. The Circuit affirmed the finding of joint and several liability contained in the April 23rd Order, and affirmed the District Court's award of attorneys' fees. The Circuit vacated the Augmented Judgment only to the extent it improperly awarded ACE its expert witness fees, and remanded "so that the district court may correspondingly revise the Augmented Judgment."

On February 13, 2014, ACE filed two proofs of claim in each of these cases – one secured and one unsecured – asserting a claim against each Debtor in the amount of $3,464,365.13 – the amount of the liability determined up to and including the May 8th Augmented Judgment. Although not included within the claims as originally filed, ACE also argues that it is entitled to be paid post-petition interest, post-petition attorneys' fees and post-petition costs – which are laid out in ACE's supplement to its proof of claim, filed on August 8, 2014. According to ACE, its claim as so augmented would amount to $5,170,953.83[8] through and including September 8, 2014, with interest, attorneys' fees and costs continuing to accrue until final payment has been made.

On May 15, 2014, the Debtors objected to ACE's claim, but solely to the extent that the claim seeks post-petition attorneys' fees and costs to collect the pre-petition judgment. The Debtors' primary argument in the original objection was that the New York Debtor and Creditor Law section 276-a, upon which the Southern District Court based its award of attorney fees' and costs, only allows such fees and costs to accrue up to the point of judgment. The Debtors also argue that even if fees and costs were allowable past the point of the judgment, the filing of the

---

[8] This number includes a $33,762.50 reduction in the claim amount for expert witness fees which were disallowed by the Circuit Court. To the extent the Debtors disagree with the amount of ACE's allowance for expert witness fees, that will be the subject of further proceedings before this Court to finally liquidate the amount of the claim.

bankruptcy prohibits ACE's collection of such fees and costs.  Although the Debtors argue that *post-judgment* fees are improper under the statute, their moving papers conclude by asking this Court to "exclude all post-petition date attorneys' fees and costs. . ." [Dkt #237-1 at 10].  It was subsequently clarified at a hearing held on June 16, 2014, that the Debtors are objecting only to the inclusion of *post-petition* attorneys' fees and costs, rather than *post-judgment*.  The Sixth Amended Joint Plan of Reorganization, filed by the Debtors on June 30, 2014 concedes that ACE has a claim in the amount of $3,464,365.13 (less expert witness fees disallowed by the Circuit) plus interest at 12% per annum from the date of the ACE judgment to the payment date, and the only open issue is "such additional amounts, if any, that the Bankruptcy Court allows on account of legal fees incurred by ACE subsequent to the date of the ACE Judgment."  [Dkt #265, ¶1.3].

ACE responds to the Debtors' objection to claim arguing primarily that the Southern District Court's orders awarding them attorneys' fees and costs through the date of collection are *res judicata* and any finding by this Court that ACE is not entitled to assert a claim for attorneys' fees and costs up through the point of collection would be an improper collateral attack on valid and enforceable orders of the Southern District Court.  ACE also argues that the Debtors' interpretation of the NY DCL 276-a is wrong, but in any event, is irrelevant because the Southern District Court's order is final and non-appealable and must be upheld by this Court.  Absent any basis for finding ACE's claim unenforceable outside of bankruptcy, ACE argues that there must be some basis under the Bankruptcy Code to disallow a claim for post-petition attorneys' fees and costs – and, they argue, there is none.  *See Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,* 549 U.S. 443 (2007); *Ogle v. Fid. & Deposit Co. of Maryland*, 586 F.3d 143 (2d Cir. 2009); 11 U.S.C. § 502(b).

*Analysis*

The allowance and disallowance of claims against a bankruptcy estate are governed by section 502 of the Bankruptcy Code. Section 502 provides that:

> (a) a claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, . . . objects.
>
> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, *if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . as of the date of the filing of the petition, and shall allow such claim in such amount*, except to the extent that --
>
> . . . (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured; [or]
>
> . . . (2) such claim is for unmatured interest; . . . .

11 U.S.C. § 502(a) and (b)(1), (2) (emphasis added).

A "claim" means "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. . ." 11 U.S.C. §101(5).

Consistent with section 502, it is a well-excepted principal that claims enforceable under applicable non-bankruptcy law will be allowed in bankruptcy unless they are expressly disallowed under section 502. *Travelers Casualty & Surety v. Pacific Gas & Electric Co.*, 549 U.S. 443 (2007). With respect to the specific issue of an unsecured creditor's right to assert a claim in bankruptcy for post-petition attorneys' fees and costs, the Supreme Court in *Travelers v. PG&E*, held that a creditor was not precluded from asserting an unsecured claim for *post-petition* attorneys' fees, as long as that creditor has an enforceable basis – under a contract in that case – to assert such a claim. The *Travelers* decision was based on the Court's interpretation of section

502(a) and (b), as well as the definition of claim in section 101 of the Bankruptcy Code, and relied in part on the general presumption "that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." *Travelers*, 549 U.S. at 452-53 (citing 11 U.S.C. §502(b)).

Subsequent to the *Travelers* decision, the Second Circuit in 2009 held that an unsecured creditor was entitled to recover post-petition attorneys' fees that were authorized by an otherwise enforceable prepetition contract of indemnity but which were contingent on post-petition events. *Ogle v. Fidelity & Deposit Co.*, 586 F.3d 143 (2d Cir. 2009). In *Ogle*, the Circuit held that "an unsecured claim for post-petition fees, authorized by a valid pre-petition contract, is allowable under section 502(b) and is deemed to have arisen pre-petition." *Ogle*, 586 F.3d at 147. In *Ogle*, the Court of Appeals addressed one argument that the Supreme Court failed to address in *Travelers*; that is, whether section 506(b) which allows post-petition fees and costs to the over-secured creditor dictates the conclusion that unless a creditor qualifies under section 506(b), that creditor cannot be entitled to post-petition fees and costs. The Second Circuit concluded that it did not. *Ogle*, 586 F.3d at 148 ("…[W]e hold that section 506(b) does not implicate unsecured claims for post-petition attorneys' fees, and therefore interposes no bar to recovery."). *See also In re SNTL Corp.*, 380 B.R. 204 (9th Cir. B.A.P. 2007) (finding section 506 to be "irrelevant to determining the allowability of an unsecured claim", and relying solely on section 502 to determine allowance of post-petition attorney fees and costs).

Although the Second Circuit appears to hold the minority view on this issue, it is nonetheless precedent which is binding on this Court. *See, e.g.*, *In re Seda France, Inc.,*, No. 10-12948, slip op. at 1 (Bankr. W.D. Tex. July 22, 2014) (stating that a majority of courts hold that an "unsecured creditor is not entitled to collect post-petition attorneys' fees, costs, and other

similar charges – even if there is an underlying contractual right to do so.") (citing *In re Electric Machinery,* 371 B.R. 549 (Bankr. M.D. Fla. 2007)).

Although the facts of both *Ogle* and *Travelers* involved pre-petition contracts upon which the claim to attorneys' fees was based, the holdings of those cases also extend to claims for attorney fees' and costs which are based upon statute. *See Travelers*, 549 U.S. at 448 (explaining that the "American Rule" can be overcome by statute or enforceable contract). As conceded by ACE, its claim for post-petition attorneys' fees and costs is not based upon a pre-petition contract, nor is it based upon any statute allowing for the recovery of same. Rather, ACE's claim for post-petition attorneys' fees and costs is based upon the pre-petition orders and judgments of both the Utah District Court and the Southern District Court, as subsequently affirmed by the Court of Appeals for the Second Circuit. Both *Travelers* and *Ogle* contain language which seems to limit the unsecured creditor's claim for post-petition attorneys' fees and costs to those which are based upon a valid pre-petition contract or statute. The decisions are silent as to valid and enforceable pre-petition judgments. However the very logic of the opinions, and the plain language of sections 101(5) and 502(b)(1), seems to make clear that a creditor's claim predicated on a final and enforceable pre-petition judgment must be treated the same way.

The Utah Judgment imposed liability, albeit an unliquidated liability, against the Stock Trust for "attorneys fees to collect the judgment." Neither party disputes that the Utah Judgment is final and non-appealable. Therefore, the Utah Judgment is *res judicata* on the issue of the Stock Trust's unliquidated liability to ACE for "attorneys fees to collect the judgment." Most importantly, the Utah Judgment is, except for the stay imposed by these bankruptcy filings, enforceable. Section 101(5) defines a "claim" as any right to payment, including a right to payment that is unliquidated on the petition date. Section 502(b)(1) requires this Court to

disallow any claim which is *unenforceable* against the debtor. Although this Court could find no caselaw authority to extend the rule of *Travelers* and *Ogle* to claims based upon an enforceable pre-petition judgment as opposed a contract or statute, the language of section 502(b)(1) and the reasoning supporting both *Travelers* and *Ogle*, lead this Court to conclude that the rule should be so extended. This Court cannot find that ACE's claim for "attorneys fees to collect the [Utah] judgment" is unenforceable . . . under any agreement or applicable law," 11 U.S.C. §502(b)(1), nor is there otherwise any basis to disallow such claim under another subsection of 502(b).

Similarly, the April 23rd Order and Judgment imposed an unliquidated liability against the Stock Trust, Realty Trust, Robert and Margery, for "all attorneys fees and costs related to collection of the Judgment through the present proceedings. . . [plus] all attorneys' fees and costs related to the [Utah action] contingent on any order or determination issued by that Court." The dollar amount of the liability established by the April 23rd Order and Judgment was liquidated in the May 8th Augmented Judgment, but only as against Robert.[9] Nonetheless, the Debtors have stipulated that the $3,464,365.13 liability established against Robert only in the May 8th Augmented Judgment, will be allowed against all of the Debtors. This agreement is reflected in the latest iteration of the Debtors' plan of reorganization.

The April 23rd Order and Judgment also established further liability as against the Stock Trust, Realty Trust, Margery and Robert "for all attorneys' fees and costs of Windels Marx and Parsons Behle to collect the Augmented Judgment ("The Final Augmented Judgment") until the judgment has been fully satisfied." The April 23rd Order and Judgment, affirmed by the Second

---

[9]     The Debtors argue that the language in the May 8th Augmented Judgment giving permission to ACE to petition that Court for further augmentation of the Augmented Judgment for attorneys' fees and costs to collect the Judgment means that the future fees and costs were not actually awarded, but rather was subject to further application, and the right to seek further application was cut off by the bankruptcy. This argument ignores the prior finding of liability for same contained in the April 23rd Order and Judgment.

Circuit, is final and therefore is *res judicata* on the issue of the Stock Trust, Realty Trust, Margery and Robert's liability for the attorneys' fees and costs of Windels Marx and Parsons Behle to collect the Augmented Judgment "until the judgment has been fully satisfied". Although the attorneys' fees and costs of Windels Marx and Parsons Behle through April 22, 2013 were included in the Augmented Judgment, such fees and costs remain unliquidated beyond April 22, 2013. Although the liability remains unliquidated it is nonetheless a valid pre-petition liability for which ACE may assert a claim in this bankruptcy case. ACE's supplemental proof of claim filed on August 8, 2014 would liquidate and further augment the judgment in the total amount of $5,170,704.67. The sole issue to be determined in this case going forward is whether and to what extent the attorneys' fees and costs sought by ACE in its supplemental proof of claim, dated August 8, 2014 [Dkt #282] constitute fees and costs of the named counsel "to collect the Augmented Judgment. . ." The Debtors have retained their right to argue that certain of ACE's fees and costs in connection with this bankruptcy case do not qualify as costs of "collection".

ACE's argument that it is entitled to secured status for the amount of its post-petition attorneys' fees and costs under section 506, fails. Section 506(b) specifically grants secured status to the oversecured creditor for "any reasonable fees, costs, or charges *provided for under the agreement or State statute under which such claim arose*." (emphasis added). As this Court found, ACE's claim in this case arises from the April 23rd and May 8th Orders and Judgments of the Southern District Court, not from an agreement or State statute. Thus section 506(b) does not apply.

*Conclusion*

Having determined that ACE is entitled to assert a claim in this case which includes post-petition attorneys' fees and costs associated with collecting the Augmented Judgment, this matter will be adjourned for further proceedings to finally determine the amount of ACE's claim; specifically to determine to what extent ACE's post-petition attorneys' fees and costs were incurred to "collect the Augmented Judgment." In this regard, the Debtors have retained the right to dispute certain, or all, of ACE's post-petition attorneys' fees and costs on the basis that some or all of those fees and costs were not incurred to "collect the judgment."

Dated: Central Islip, New York
      September 19, 2014                    */s/ **Robert E. Grossman***
                                                      Robert E. Grossman
                                                        United States Bankruptcy Judge